**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| RUTH LEZCANO-BONILLA<br><br>Plaintiff<br>v.<br><br>FELIX MATOS-RODRIGUEZ, et al<br><br>Defendants | Civil No. 07-1453 (SEC) |

**OPINION AND ORDER**

Pending before the Court is Plaintiff Ruth Lezcano-Bonilla ("Plaintiff"), Ralph Rodriguez, and the Rodriguez-Lezcano Conjugal Partnership's motion for partial summary judgment against Defendant Felix Matos-Rodríguez's ("Defendant"), and request for entry of default judgment against Co-defendants Wigberto Rodríguez-Martinez ("Rodríguez"), and Lourdes Luna ("Luna") (collectively "Co-defendants")(Dockets ## 39 & 40). Defendant Felix Matos-Rodríguez filed an opposition (Docket # 88), and a cross-motion for summary judgment against Plaintiffs (Dockets ## 43 & 44), which Plaintiffs duly opposed (Docket # 86). After carefully considering the filings, the evidence on the record, and the applicable law, Defendant's motion for summary judgment is **GRANTED**, and Plaintiffs' motion for partial summary judgment and default judgment is **DENIED**.

**Factual and Procedural Background**

On May 29, 2007, Plaintiffs filed suit against Defendant, and Co-defendants Wigberto Rodríguez-Martinez ("Rodríguez"), and Lourdes Luna ("Luna") (collectively "Co-defendants"), seeking damages under 42 U.S.C. § 1983, for alleged due process violations under the Fourteenth Amendment to the U.S. Constitution, U.S. Const. amend. XIV. Plaintiff also seeks relief as provided in Law No. 115 of December 20, 1991, PR Laws Ann. tit. 29 § 194 et seq., and Article 1802 of the Civil Code of Puerto Rico, PR Laws Ann. tit. 31 § 5141. Plaintiff contends that she was summarily suspended by Defendant from her position as a social worker in the Department of Family of the Commonwealth of Puerto Rico's ("the

agency") Administration of Family and Children ("ADFAN") without affording her a pre-termination hearing. Pursuant to the complaint, her suspension was based upon a news report issued by a newscast radio station alleging that Plaintiff had requested $5,000 from Co-defendants, registered foster parents with the agency, in exchange for allowing them to keep custody of a minor under their care.

On June 1, 2009, Plaintiff moved for summary judgment against Defendant, and entry of default and default judgment against Co-defendants. Shortly thereafter, Defendant filed his cross-motion for summary judgment. On August 26, 2009, default was entered against Co-defendants. Docket # 49. However, Plaintiff's request for default judgment as to Co-defendants was denied as premature, since the claims against Defendant were still pending before this Court.

Pursuant to the retirement of Judge Raymond L. Acosta, the present case was reassigned to the Undersigned. Docket # 63. After some procedural hurdles, the parties filed their respective oppositions to the pending motions for summary judgment.

**Applicable Law and Analysis**

*R. FED. CIV. P. 56*

The Court may grant a motion for summary judgment when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(c); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Ramírez Rodríguez v. Boehringer Ingelheim, 425 F.3d 67, 77 (1st Cir. 2005).  In reaching such a determination, the Court may not weigh the evidence. Casas Office Machs., Inc. v. Mita Copystar Am., Inc., 42 F.3d 668 (1st Cir. 1994).  At this stage, the court examines the record in the "light most favorable to the nonmovant," and indulges all "reasonable inferences in that party's favor." Maldonado-Denis v. Castillo-Rodríguez, 23 F.3d 576, 581 (1st Cir. 1994).

**Civil No. 07-1453 (SEC)**                                                                 3

Once the movant has averred that there is an absence of evidence to support the nonmoving party's case, the burden shifts to the nonmovant to establish the existence of at least one fact in issue that is both genuine and material. Garside v. Osco Drug, Inc., 895 F.2d 46, 48 (1st Cir. 1990) (citations omitted). "A factual issue is 'genuine' if 'it may reasonably be resolved in favor of either party and, therefore, requires the finder of fact to make 'a choice between the parties' differing versions of the truth at trial.'" DePoutout v. Raffaelly, 424 F.3d 112, 116 (1st Cir. 2005)(citing Garside, 895 F.2d at 48 (1st Cir. 1990)); see also SEC v. Ficken, 546 F.3d 45, 51 (1st Cir. 2008).

In order to defeat summary judgment, the opposing party may not rest on conclusory allegations, improbable inferences, and unsupported speculation. See Hadfield v. McDonough, 407 F.3d 11, 15 (1st Cir. 2005) (citing Medina-Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990). Nor will "effusive rhetoric" and "optimistic surmise" suffice to establish a genuine issue of material fact. Cadle Co. v. Hayes, 116 F.3d 957, 960 (1st Cir. 1997). Once the party moving for summary judgment has established an absence of material facts in dispute, and that he or she is entitled to judgment as a matter of law, the "party opposing summary judgment must present definite, competent evidence to rebut the motion." Méndez-Laboy v. Abbot Lab., 424 F.3d 35, 37 (1st Cir. 2005) (citing Maldonado-Denis v. Castillo Rodríguez, 23 F.3d 576, 581 (1st Cir. 1994). "The non-movant must 'produce specific facts, in suitable evidentiary form' sufficient to limn a trial-worthy issue. . . . Failure to do so allows the summary judgment engine to operate at full throttle." Id.; see also Kelly v. United States, 924 F.2d 355, 358 (1st Cir. 1991) (warning that "the decision to sit idly by and allow the summary judgment proponent to configure the record is likely to prove fraught with consequence."); Medina-Muñoz, 896 F.2d at 8 (citing Mack v. Great Atl. & Pac. Tea Co., 871 F.2d 179, 181 (1st Cir. 1989)) (holding that "[t]he evidence illustrating the factual controversy cannot be conjectural or problematic; it must have substance in the sense that it limns differing versions of the truth which a factfinder must

**Civil No. 07-1453 (SEC)**                                                                                          4

resolve.").

Because the instant motions are for summary judgment, the parties must comply with the requirements of Local Rule 56, and file a separate, short and concise statement of facts, set forth in numbered paragraphs, and supported by record citations as required in Local Rule 56(e). See Local Rule 56(b). In turn, when confronted with a motion for summary judgment, the opposing party must:

> [s]ubmit with its opposition a separate, short, and concise statement of material facts. The opposing statement shall admit, deny or qualify the facts supporting the motion for summary judgment by reference to each numbered paragraph of the moving party's statement of material facts. Unless a fact is admitted, the opposing statement shall support each denial or qualification by a record citation as required by this rule.

Local Rule 56(c). If the opposing party fails to do so, "summary judgment should, if appropriate, be entered." Rule 56(e)(2).

Local Rule 56(e) provides that "a court may disregard any statement of fact not supported by a specific record citation to record material properly considered on summary judgment." Moreover, "the court shall have no independent duty to search or consider any part of the record not specifically referenced in the parties' separate statements of facts." Id. These rules "are meant to ease the district court's operose task and to prevent parties from unfairly shifting the burdens of litigation to the court." Cabán-Hernández v. Phillip Morris USA, Inc., 486 F.3d 1, 8(1st Cir. 2007). The First Circuit has repeatedly held that when the parties ignore the Local Rules, they do so at their peril. See Ruiz-Rivera v. Riley, 209 F. 3d 24, 28 (1st Cir. 2000).

**Applicable Law and Analysis**

Before setting forth the facts found by this Court to be undisputed and relevant to the matter at hand, we must first address several compliance issues presented to the Court when reviewing Defendant's filings. On May 26, 2010, this Court ordered the parties to re-file their respective oppositions in compliance with Rule and Local Rule 56. Docket # 80-1. Accordingly, both parties re-filed their responses to the opposing party's statement of facts.

**Civil No. 07-1453 (SEC)**                                                                                                       5

     Notwithstanding the above, at first glance, this Court notes that Defendant failed to provide a single record citation when opposing Plaintiff's Statement of Uncontested Facts ("Plaintiff's SUF")(Docket # 40). See Docket # 88. Moreover, in some cases, Defendant did not deny Plaintiff's assertions of fact paragraph by paragraph as required by Local Rule 56(c). Instead, Defendant denies some of Plaintiff's proposed facts by stating "Plaintiffs proposed facts nos. 31-35 are contested." Docket # 88, p. 6. As previously stated in our order issued on May 26, 2010, this method fails to satisfy Local Rule 56's clear mandate that the opposition to a motion for summary judgment "shall admit, deny or qualify the facts by reference to each numbered paragraph." See also Cabán-Hernández v. Philip Morris USA, Inc., 486 F.3d 1, 8 (1st Cir. 2007).

     Similarly, Defendant's cross-motion for summary judgment, and accompanying Statement of Uncontested Facts ("Defendant's SUF"), do not comport with Local Rule 56. As Plaintiff correctly points out, Defendant failed to submit an affidavit or unsworn statement with his motion for summary judgment to authenticate his exhibits.[1] See Docket # 44-1. This alone suffices to disallow some of Defendant's exhibits[2] insofar as the First Circuit has consistently held that "[t]o be admissible at the summary judgment stage, 'documents must be authenticated by and attached to an affidavit that meets the requirements

---

    [1] It is well settled that "[d]ocuments supporting or opposing summary judgment must be properly authenticated." Carmona v. Toledo, 215 F.3d 124, 131 (1st Cir.2000) (citing FED.R.CIV.P. Rule 56(e)). "The failure to authenticate a document properly precludes its consideration on a motion for summary judgment." Robinson v. Bodoff, 355 F.Supp.2d 578, 582 (D.Mass.2005) (striking all exhibits that were submitted without affidavits). To be admissible at the summary judgment stage, documents must be authenticated by and attached to an affidavit that meets the requirements of Rule 56(e). 10A WRIGHT, MILLER & KANE, FEDERAL PRACTICE & PROCEDURE § 2722 (3d ed.1998).

    [2] Exhibits B, H, I, J, K, and L are not properly authenticated. However, Plaintiff refers to the summary suspension at Exhibit H, and as such, it will be considered when ruling on the present motion. Exhibits D, M and N were authenticated via deposition statements. See Docket # 44-2, pp. 18-24, 32-33, 37 and 144.

**Civil No. 07-1453 (SEC)**                                                                                              6

of Rule 56(e).'" <u>Carmona v. Toledo</u>, 215 F.3d 124, 131 (1st Cir. 2000) (citing <u>Orsi v. Kirkwood</u>, 999 F.2d 86, 92 (4th Cir. 1993)). More specifically, in <u>Carmona</u>, the Court refused to give credence to "a purported copy of the investigation file -- unsworn, uncertified, and, at first, untranslated -- to the motion." <u>Id.</u> As a result, Defendant's proposed facts 13, 15, 20, 21 and 25 will not be considered when ruling on the instant motion.[3] Lastly, in a section following his SUF, Defendant provides responses to Plaintiff's SUF, which is disallowed by Local Rule 56.[4] Thus this Court will disregard pages 8 to 11 of Defendant's SUF. Notwithstanding the above, Defendant's proposed facts 1, 9-12 and 16 were admitted by Plaintiff, therefore, they are uncontested for purposes of the present motion.

Considering the foregoing, the relevant uncontested facts are as follows. Plaintiff is a career employee within the agency, employed as a Social Worker assigned to ADFAN, and has worked for the agency since 1999. Plaintiff's SUF ¶ 1; Defendant's SUF ¶ 1; Joint Proposed Pretrial Order ("PTO") at Docket # 83, p. 35-36. On August 14, 2006, the case involving minor JMG was formally assigned to Plaintiff for the search of an adequate "pre-adoptive" home for the minor. Defendant's SUF ¶ 9.[5] On or around August 16 and 17, 2006, Plaintiff identified a family to place minor JMG. Defendant's SUF ¶ 10. In order to re-locate the minor, Plaintiff had to first meet with Co-defendants, who maintained a foster care home that served children under the care of the agency, to inform them of the removal of the minor from their house. <u>Id.</u> at 10 & 12. On August 21, 2006, Plaintiff spoke to Co-defendants via

---

[3] Although Defendant failed to properly support proposed facts 14, 16-19, 22-24, 26 and 27, some of them were partially admitted by Plaintiff or were deemed uncontested in the Joint Proposed Pretrial Order at Docket # 83.

[4] Defendant opposed Plaintiff's SUF at Docket # 88. Thus this portion of Defendant's SUF is unnecessary. Even so, they fail to correlate their responses to Plaintiff's paragraphed facts.

[5] Since Plaintiff was assigned to the case in controversy on August 14, 2006, this Court finds that Defendant's proposed facts 2-7 are irrelevant for purposes of the present motion.

**Civil No. 07-1453 (SEC)**                                                                 7

telephone on two separate occasions. Defendant's SUF ¶ 11. On August 23, 2006, Plaintiff visited Co-defendants' household regarding the relocation process for minor JMG and to inform them that the minor was going to be removed the next day. Defendant's SUF ¶ 12; Plaintiff's SUF ¶ at 2 & 3; PTO at p. 36. On even date, Rodríguez threatened Plaintiff with going to the press. Plaintiff's SUF ¶ 4.

As of the date of Plaintiff's visit, Rodríguez had not commenced any adoption petition regarding the minor that was going to be removed. Id. at 5. Plaintiff never requested money from Rodríguez. Id. at 6. By the time Plaintiff returned to the agency, Rodríguez had called a radio news program and had indicated that Plaintiff attempted to extort $5,000.00 from him, in exchange for leaving the minor under his care. Id. at 7; Defendant's SUF ¶ 14; PTO at p. 36. The allegations made by Rodríguez in the radio where very damaging to Plaintiff's image and reputation. Plaintiff's SUF ¶ 8.

Defendant was the agency's Secretary at the time, appointed two months prior to this incident. Id. at 9 & 10; PTO at p. 36. He had familiarized himself with the disciplinary proceedings in the agency only during those two months. Plaintiff's SUF ¶ 11; PTO at p. 36. Defendant was informed about the allegations made through the radio, *i.e.*, that a social worker from the agency asked a client who was undergoing an adoption process for $5,000.00 in order to continue with the adoption process. Plaintiff's SUF ¶ 12; PTO at p. 36. Defendant sought to conduct an investigation in order to protect the good name of the agency. Plaintiff's SUF ¶ 14; PTO at p. 36. Accordingly, he asked ADFAN administrator, Glendaliz Correa ("Correa"), about the allegations made by Rodríguez on the radio. Plaintiff's SUF ¶ 13; PTO at p. 36. Correa then issued a request to Defendant to initiate an Administrative Investigation regarding the allegations against Plaintiff. Defendant's SUF ¶ 18.

As part of the Administrative Investigation, Correa communicated with Plaintiff's direct supervisor, and requested her personnel file, whereupon she learned that Plaintiff had

**Civil No. 07-1453 (SEC)** 8

---

been previously charged of similar conduct in 2001 in a separate adoption case. Defendant's SUF ¶ 16; PTO at p. 36. In the prior incident, Plaintiff was suspended without pay for a period of 30 days after admitting that she requested $300 from a potential adoption parent. Defendant's SUF ¶ 17.[6] After reviewing Plaintiff's personnel file, Correa issued a report informing Defendant that Plaintiff had been previously sanctioned for similar conduct. Plaintiff's SUF ¶15 & 16; PTO at p. 36. Correa then asked for a full inquiry into Rodríguez's allegations about Plaintiff's actions. Plaintiff's SUF ¶ 17; PTO at p. 36. Correa did not review statements made by Plaintiff prior to issuing her memorandum to Defendant, nor did she review the adoption records of the minor, or the foster home records from the household run by Co-defendants. Plaintiff's SUF ¶ 18 & 20; PTO at p. 36. She described Plaintiff's actions as depicted by Rodríguez in the radio. Id. at 19.

On August 24, 2006, Plaintiff received a summary suspension notice from Defendant, which would remain in effect until the investigation concluded. Plaintiff's SUF ¶ 21 and 36; PTO at p. 36-37. Thus Plaintiff was summarily suspended with pay while the agency investigated the allegations against her.[7] Defendant's SUF ¶ 19; Plaintiff's SUF ¶ 36; PTO at p. 37. In reaching his decision to suspend Plaintiff, Defendant considered the following

---

[6] Plaintiff partially admits Defendant's SUF ¶ 17. However, there are conflicting deposition testimonies as to whether Plaintiff requested the money as a loan or a bribe. Since the Court may not weigh the evidence at this juncture, this issue remains in controversy. Casas Office, 42 F.3d 668. Notwithstanding, there is no controversy as to the fact that Plaintiff was suspended without pay for a period of 30 days for requesting $300 from a potential adoptive parent.

[7] The procedure in this type of situation within the agency is as follows: the legal division conducts an investigation, holds the proceedings, including all parties involved who may bring clarity to the situation and provide testimony; they then issue a recommendation to the attorneys in the legal division; the attorneys review the evidence, and submit a recommendation to the agency's Secretary. Id. at 28. The agency keeps an internal adoption file, a foster care file for the Rodríguez household, an evaluation file for said household, and a file for the minors. Plaintiff's SUF ¶ 29; PTO at p. 37.

**Civil No. 07-1453 (SEC)** 9

facts and concerns: that Plaintiff had previously incurred in similar conduct, the potential smearing of the agency's trust and good standing, that Rodríguez alleged that Plaintiff attempted to bribe him, and that Plaintiff dealt directly with children and situations concerning family relationships. Plaintiff's SUF ¶ 22; PTO at p. 36-37. Defendant validated Rodríguez's statements during the investigation conducted after the summary suspension. Plaintiff's SUF ¶ 25. However, as of August 24, 2006, Defendant did not have a sworn statement from Rodríguez nor reviewed his statements; the only evidence that Defendant had were the statements made by Rodríguez to the radio station. Id. at 26, 27 & 33.[8] He did not review the adoption records of the minor, or the foster home records from the household run by Co-defendants, nor did he assess the truthfulness, accuracy, or reliability of the statements made by Rodríguez on air, or possess documentation showing that Plaintiff attempted to bribe Rodríguez. Id. at 30-32. Defendant does not remember whether by August 24, 2006, he had reached the conclusion that Plaintiff attempted to bribe Rodríguez. Id. at 35. He only knew that a confrontation between Plaintiff and Rodríguez took place. Id. at 34.

Plaintiff was summoned for an administrative interview to be held on September 13, 2006. Defendant's SUF ¶ 22. She was also summoned for an administrative interview set for September 22, 2006. Defendant's SUF ¶ 23. Plaintiff did not appear at the administrative interview held on September 22, 2006 because she was hospitalized. Defendant's SUF ¶ 24.[9] However, her attorney was present. Id. As a result of the recommendation issued by the agency's legal department, on October 10, 2006, Defendant issued a Notice of Intent to

---

[8] It is uncontested that Defendant believed that she could have been terminated on August 24, 2006, and that he did not consider moving Plaintiff to another position within the agency. Plaintiff's SUF ¶ 23 & 24; PTO at p. 37. However, said facts are irrelevant to the issue at hand.

[9] Although Plaintiff contests Defendant's proposed fact 24, she admits that she did not attend the interview because she was hospitalized. She further contends that the union attorney which represented her incorrectly informed that she did not wish to testify on her own behalf as part of the investigation. See Docket # 44, p. 7. This is irrelevant for purposes of determining whether Defendant is liable to Plaintiff under Section 1983.

Dismiss to Plaintiff. Defendant's SUF ¶ 26. In response to said notice, Plaintiff requested an informal administrative hearing, which was held on December 19, 2006. Defendant's SUF ¶ 27. After the hearing, and upon recommendation of the Examining Officer, Plaintiff was reinstated to her position on March 16, 2007. Id. However, Plaintiff received the final determination notice setting aside the summary suspension, and was effectively reinstated, on July 18th, 2007. Plaintiff's SUF ¶ 37. Upon her return to work, Plaintiff has experienced that her co-workers do not trust her, and do not invite her to interventions. Id. at 38.

**Applicable Law and Analysis**

The Supreme Court has held that Section 1983 in itself does not confer substantive rights, but provides a venue for vindicating federal rights elsewhere conferred. See Graham v. M.S. Connor, 490 U.S. 386, 393-94 (1989). There are two essential elements of a Section 1983 claim: "(1) the challenged conduct was attributable to a person acting under color of state law; and (2) the conduct deprived the plaintiff of rights secured by the Constitution or laws of the United States." Velez-Rivera v. Agosto-Alicea, 437 F.3d 145, 151-152 (2nd Cir. 2006); Johnson v. Mahoney, 424 F.3d 83, 89 (1st Cir. 2005); Martínez v. Colón, 54 F.3d 980, 984 (1st Cir. 1995) (citing Chrongis v. Board of Appeals, 811 F.2d 36, 40 (1st Cir. 1987)). This second prong has two aspects: (1) there must have been an actual deprivation of the plaintiff's federally protected rights; and (2) there must have been a causal connection between the defendant's conduct and the deprivation of the plaintiff's federal rights. See Gutiérrez-Rodríguez, 882 F.2d 553, 559 (1st Cir. 1989); Mahoney, 424 F.3d at 89; Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 n. 58 (1978); Gutiérrez-Rodríguez, 882 F.2d at 562; Figueroa v. Aponte-Roque, 864 F.2d 947, 953 (1st Cir. 1989). Furthermore, the defendant's conduct must be shown to be intentional, grossly negligent, or amounted to a reckless or callous indifference to the plaintiff's constitutional rights. See Simmons v. Dickhaut, 804 F.2d 182, 185 (1st Cir. 1986); Gutiérrez-Rodríguez, 882 F.2d at 562.

In the complaint, Plaintiff alleges both procedural and due process violations. The

Fourteenth Amendment to the U.S. Constitution provides that no State shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, §1. Thus, we will address each in turn.

*Procedural Due Process*

In order to establish a procedural due process claim under Section 1983, Plaintiff must first prove that she has a property interest as defined by state law and, second, that Defendant, acting under color of state law, deprived her of that property interest without a constitutionally adequate process. Logan v. Zimmerman Brush Co., 455 U.S. 422, 428 (1982); PFZ Properties, Inc. v. Rodríguez, 928 F.2d 28, 30 (1st Cir. 1991); see also Maymi v. P.R. Ports Auth., 515 F.3d 20, 29 (1st Cir. 2008).

"Property interests are not created by the Constitution; 'they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law.'" De Vélez v. Zayas, 328 F. Supp. 2d 202, 211 (D.P.R. 2004) (citing Bd. of Regents v. Roth, 408 U.S. 564, 577, 33 L. Ed. 2d 548, 92 S. Ct. 2701 (1972). In Puerto Rico, employees classified as "career" or permanent" have vested property rights, and cannot be deprived of that right without due process of law. Borges-Colon v. De Jesus-Flores, 483 F.3d 1, 8 (1st Cir. 2006); Figueroa-Serrano v. Ramos-Alverio, 221 F.3d 1, 5 (1st Cir. 2000); Natal-Rosario v. P.R. Police Dep't, 609 F. Supp. 2d 194, 201 (D.P.R. 2009). At a minimum, career employees are entitled to "notice and a meaningful opportunity to respond" prior to termination. Figueroa, 221 F.3d at 5-6 (citations omitted). At the pre-termination stage, due process requires that "[t]he tenured public employee [receive] oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." Cleveland Bd. of Educ. V. Loudermill, 470 U.S. 532, 546 (1985); see also Natal-Rosario, 609 F. Supp. 2d at 201.

Plaintiff first contends that she was suspended without a pre-deprivation hearing, in violation of her vested property rights. In the present case, the first element of a Section 1983

**Civil No. 07-1453 (SEC)**                                                                                                     12

claim (acting under color of state law) has not been disputed by either party, and it is apparent from the complaint that Defendant was acting under color of state law when he summarily suspended Plaintiff. Additionally, there is no controversy as to Plaintiff's career status. As such, she has a vested property right in her position within the agency. It is also uncontested that she was summarily suspended with pay from August 24, 2006 until March 16, 2007. Moreover, pursuant to the above stated facts, as part of the agency's investigation, Plaintiff was summoned to two administrative interviews within a month of the date of the incident. In the notice of intention to dismiss, Plaintiff was notified of the statutes that she had apparently violated as well of the charges that were made against her. She was also advised about her right to request an informal administrative hearing, which she timely requested, and attended accompanied by her attorney. Thereafter, based upon the Examining Officer's report, the notice of intention to dismiss and summary suspension were vacated, and Plaintiff was reinstated in her position.

In his opposition, Defendant points to case law holding that there is no deprivation of a property interest when an employee is suspended with pay. This Court notes that, in Loudermill, the Supreme Court explained that "in those situations where the employer perceives a significant hazard in keeping the employee on the job, it can avoid the problem by suspending with pay." 470 U.S. at 544. Thereafter, Gilbert v. Homar, 520 U.S. 924, 932 (1997), "rejected a categorical rule imposing constitutional due process requirements on suspensions without pay." Torres-Rosado v. Rotger-Sabat, 335 F.3d 1, 9 (1st Cir. 2003).[10] Accordingly, this Circuit has rejected the notion that due process always requires a predeprivation hearing. In Torres-Rosado, the appeals court noted that "numerous courts have held that paid suspensions could be imposed without the sorts of procedures the Constitution demands for terminations of career employees who have propietary interests in

---

[10] In Gilbert, the Supreme Court found no due process rights violations even where plaintiff was summarily suspended without pay.

**Civil No. 07-1453 (SEC)**                                                                              13

---

their jobs." 335 F. 3d at 10, n. 8. As a result, the Court concluded that plaintiff's paid suspension, "which caused only a very temporary deprivation of job functions and no financial loss, did not give rise to any constitutional entitlement to due process." Id. at 10.

Even more, this district has held that, in emergency situations, a post-deprivation hearing may satisfy due process concerns. Ginorio v. Gomez, 322 F. Supp. 2d 153, 162 (2004). This is, in part due, to the Supreme Court's recognition that "on many occasions, [sic] where a State must act quickly, or where it would be impractical to provide predeprivation process, post deprivation process satisfied the requirements of the Due Process Clause." Gilbert, 520 U.S. at 930; see also Parratt v. Taylor, 451 U.S. 527 (1981); FDIC v. Mallen, 486 U.S.. 230 (1988) (affirming the suspension of an employee after finding that an important government interest, accompanied by a substantial assurance that the deprivation is not baseless, may justify postponing to be heard until after the initial deprivation). In so doing, the Supreme Court noted that "it is now well established that 'due process', unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances...[instead it] is flexible and calls for such procedural protections as the particular situation demands." Id. (Citations omitted).

In Gilbert, when determining what process is constitutionally due, the Supreme Court balanced three distinct factors: 1) the private interest that will be affected by the official action; 2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and 3) the Government's interest. 520 U.S. at 931-32 (citing Mathews v. Eldridge, 424 U.S. 319, 335 (1976)).

In her opposition to Defendant's cross-motion for summary judgment, Plaintiff contends that no measures were taken to prevent an erroneous and baseless deprivation. She further defends her private interest in receiving her paycheck and the continued performance

**Civil No. 07-1453 (SEC)** 14

of her duties. Notwithstanding, although courts have "recognized the severity of depriving someone of the means of his livelihood ... they have also emphasized that in determining what process is due, account must be taken of 'the length' and 'finality of the deprivation,'" Gilbert, 520 U.S. at 932 (citations omitted). As in Torres-Rosado, Plaintiff here faced suspension with pay for a limited period of time, and suffered no financial loss. Furthermore, prompt post-suspension interviews as well as an informal administrative hearing were held. Lastly, she was eventually reinstated to her position without any effects upon her fringe benefits. Therefore she was not in effect deprived of her livelihood, nor suspended without adequate procedural safeguards.

This Court further notes that Defendant's conduct in this case is far from intentional, grossly negligent, or amounts to a reckless or callous indifference to Plaintiff's constitutional rights. Even more, his actions do not show any negative animus towards Plaintiff. Moreover, contrary to Plaintiff's assertions, Defendant's duty to protect and promote the general welfare of children and families in Puerto Rico, as well as the agency's image and reputation, is indeed an important Government interest. See P.R. Laws Ann. tit. 3, § 211 et al. Plaintiff's suspension without pay does not outweigh the Secretary's need to immediately act in these specific circumstances to avoid negative consequences for the agency as well as possible children and families being attended by Plaintiff at that time. The fact that Plaintiff was later reinstated does not mean that Defendant is liable insofar as he acted promptly and reasonably based upon the information obtained from Plaintiff's supervisor and the allegations made against her.

Based on the above, we find that the due process requirements do not attach to this case. As such, Plaintiff's procedural due process rights are **DISMISSED with prejudice**.

*Substantive Due Process*

Plaintiff also argues substantive due process violations based upon "unreasonable attacks to her dignity through capricious or arbitrary government action." Docket # 39, p. 18.

**Civil No. 07-1453 (SEC)**                                                                 15

To meet the burden on a substantive due process cause of action, Plaintiff must "present a well-pleaded claim that a state actor deprived it of a recognized life, liberty, or property interest, and that he did so through conscience-shocking behavior." Estate of Bennett v. Wainwright, 548 F.3d 155, 162 (1st Cir. 2008) (citing Clark, 514 F.3d at 112; see also Ramos-Piñero v Puerto Rico, 453 F.3d 48, 53 (1st Cir. 2006) (stating that the "shock the conscience" standard implicates behavior "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience") (citing County of Sacramento v. Lewis, 523 U.S. 833, 848 n.8 (1998))). Only "[b]ehavior 'intended to injure in some way unjustifiable by any government interest' - is the sort of official action most likely to 'shock the conscience.'" Ramos-Piñero, 453 F.3d at 53 (citations omitted).

Considering the facts of this case, the shock the conscience standard is far from satisfied in this suit. To equate Plaintiff's suspension with pay with such brutal conduct as a rape, a nearly two-month unlawful imprisonment, a shooting, a student blinded in one eye when a coach intentionally struck him in the head with a metal weight, a teacher's fabrication of sexual abuse charges against a father, resulting in loss of contact with his child for three years, a 57-day unlawful detention in the face of repeated requests for release, and police officers aiding a third-party in shooting the plaintiff, would be to lower the very high threshold for constitutional wrongdoing. See Cummings v. McIntire, 271 F.3d 341, 346 (1st Cir. 2001) (citations omitted). More so, when Plaintiff's alleged damages can be properly addressed under relevant state law. Specifically, Plaintiff's allegations regarding damages stem, in most part, from alleged defamatory statements made by Rodríguez to the radio station, which are totally unrelated, and irrelevant, to her due process claims.

*Supplemental state law claims*

Having dismissed Plaintiff's federal law claims against Defendant, her state law claims against him are **DISMISSED without prejudice**. See Newman v. Burgin, 930 F.2d 955, 963 (1st Cir. 1991) (holding that "[t]he power of a federal court to hear and to determine

**Civil No. 07-1453 (SEC)** 16

sate-law claims in non-diversity cases depends upon the presence of at least one 'substantial' federal claim in the lawsuit.") It further follows that absent a federal cause of action against Defendant, the supplemental state law claims against Co-defendants fail as well, insofar as Plaintiff does not set forth any federal claims against Co-Defendants. Accordingly, Plaintiff's state law claims against Co-Defendants are also **DISMISSED without prejudice**.

**Conclusion**

In light of the foregoing, Defendant's motion for summary judgment is **GRANTED**, and Plaintiff's motion for partial summary judgment and default judgment is **DENIED.** Accordingly, Plaintiff's federal law claims against Defendant are **DISMISSED with prejudice**, and her state law claims against all Defendants are **DISMISSED without prejudice**.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 24th day of August, 2010.

*S/Salvador E. Casellas*
SALVADOR E. CASELLAS
U.S. Senior District Judge